IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

WILLIAM J. ARD                                    CASE NO.  09-40349-LMK
and LISA CHRISTINE ARD,                           CHAPTER 7

      Debtors.

FIELDSTONE INVESTMENTS, L.L.C.,

      Plaintiff,

v.                                                ADVERSARY PROCEEDING
                                                  NO. _____
WILLIAM J. ARD and
LISA CHRISTINE ARD,

      Defendants.

_____/

**COMPLAINT OF CREDITOR, FIELDSTONE INVESTMENTS, L.L.C.,
TO DETERMINE DISCHARGEABILITY OF DEBT**

      Plaintiff, FIELDSTONE INVESTMENTS, L.L.C., by and through its undersigned counsel, sues the Defendants, WILLIAM J. ARD and LISA CHRISTINE ARD, and alleges:

<u>GENERAL ALLEGATIONS</u>

      1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157, 1334 and 11 U.S.C. §523. This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

      2.     This adversary proceeding is being brought in connection with defendants' case under chapter 7 of title 11, Case No. 09-40349-LMK (hereinafter "bankruptcy case"), now pending in this Court . Plaintiff is a creditor of defendants.

      3.     This is an adversary proceeding to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523.

## BACKGROUND

4.     In December of 2006, plaintiff, through its agents Kenneth and Kathleen McDermott ("McDermotts"), came to Leon County, Florida to view and search for real property to purchase.

5.     The McDermotts were introduced to defendant William J. Ard ("Jeff Ard") while the McDermotts were looking for real property.

6.     Jeff Ard informed the McDermotts that the defendants were selling a parcel of real property located off of Veterans Memorial Drive (State Road 59) in Leon County, Florida that Jeff Ard specifically called the "Rudd Property."

7.     Jeff Ard informed the McDermotts that the defendants had purchased the "Rudd Property" from the Rudd family.  Copies of deeds dated November 8, 2005 conveying real property from members of the Rudd family, including Geraldine Rudd, to the defendants are attached as composite Exhibit "A" (collectively, the "Rudd Deeds").

8.     Jeff Ard provided the McDermotts with surveys and appraisals depicting a rectangular-shaped piece of real property that Jeff Ard specifically called the "Rudd Property" that the defendants were selling.  Jeff Ard also provided the McDermotts with a copy of the closing statement from when the defendants purchased the "Rudd Property" from the Rudd family.  Copies of examples of these surveys and appraisals, along with the closing statement, are attached as composite Exhibit "B" (collectively, the "Written Materials").

9.     The Rudd Deeds describe the same rectangular-shaped piece of real property depicted in the Written Materials.

10.     Jeff Ard showed the McDermotts real property he called the "Rudd Property" located off of Veterans Memorial Drive (State Road 59) in Leon County, Florida consisting of a house and other land.

2

11.     Jeff Ard expressly told the McDermotts that the defendants wished to sell the entire "Rudd Property."

12.     The Official Records of Leon County, Florida reveal that the property owned by the defendants and described in the Rudd Deeds was encumbered by two (2) mortgages: a first mortgage held be People's Bank and a second mortgage held by Geraldine Rudd (collectively, the "Ard Mortgages"). Copies of the Ard Mortgages are attached as composite Exhibit "C".

13.     The Rudd Deeds and the Ard Mortgages have identical legal descriptions that describe the same rectangular-shaped piece of real property depicted in the Written Materials.

14.     At the time that Jeff Ard showed the McDermotts the property he called the "Rudd Property," the defendants were in default under the terms of the Ard Mortgages.

15.     In fact, People's Bank had notified the Ards that they were about to commence foreclosure proceedings.  On information or belief, People's Bank told the defendants there would be no more extensions of their loan, and that if the Bank was not paid by the end of 2006, then the property would be foreclosed.

16.     The McDermotts, on behalf of plaintiff, expressed an interest in purchasing the entire "Rudd Property."

17.     The defendants agreed to sell the entire "Rudd Property" to plaintiff for a purchase price of One Million Eight Hundred Fifty Thousand Dollars ($1,850,000).

18.     In light of the impending People's Bank foreclosure action, the defendants insisted to the McDermotts that any closing take place within an extremely short period of time before the end of December, 2006.

19.     The defendants did not engage a closing agent to close the transaction until December 27, 2006.

3

20.    Furthermore, as the McDermotts did not reside locally, the defendants insisted that the McDermotts sign closing documents while the McDermotts were visiting Leon County on December 28, 2006.  The defendants knew the McDermotts did not reside locally.

21.    The McDermotts were asked to sign closing documents for the transaction in a parking lot on December 28, 2006 approximately two (2) hours before the McDermotts' flight out of Leon County.

22.    The defendants did not provide a proposed purchase and sale contract or closing documents to the McDermotts until the time when the McDermotts were supposed to sign the documents in the parking lot on December 28, 2006.

23.    The documents purporting to be the purchase and sale contract and the closing documents for the transaction were signed by Ken McDermott on behalf of plaintiff in the parking lot on December 28, 2006.

24.    At the time that Ken McDermott signed the purchase and sales contract and closing documents on behalf of plaintiff in the parking lot, there was no legal description attached to the sales contract or any other closing documents.

25.    The McDermotts at all times understood that the agreement between plaintiff and the defendants was that plaintiff would be purchasing and the defendants would be selling the entire rectangular-shaped "Rudd Property" depicted in the Written Materials.

26.    Unbeknownst to the McDermotts, upon information and belief, at some point during the week of Christmas of 2006, the defendants engaged a surveyor to prepare a new legal description that carved out a portion of the rectangular-shaped parcel.

27.    At no time prior to Ken McDermott signing the purchase and sales contract and closing documents did the defendants or anyone else disclose to the McDermotts that the defendants had a new legal description prepared.

4

28.   At no time prior to Ken McDermott signing the purchase and sales contract and closing documents did the defendants or anyone else disclose to the McDermotts that a new legal description would be attached to the purported sales contract after the McDermotts signed the purported sales contract and closing documents.

29.   At no time prior to Ken McDermott signing the purchase and sales contract and closing documents did the defendants or anyone else disclose to the McDermotts that a new legal description would be attached to the deed of conveyance from the defendants to plaintiff after the McDermotts signed the purported sales contract and closing documents.

30.   A new legal description was attached to the purported sales contract and the deed of conveyance at some point after Ken McDermott signed the purported sales contract and closing documents.

31.   The McDermotts first discovered the new legal description on December 29, 2006 after the McDermotts had signed the documents and received copies of the sales contract, closing documents and the deed of conveyance from the closing agent.

32.   Immediately upon learning of the new legal description, the McDermotts contacted the closing agent and attempted to rectify the situation so that the McDermotts were receiving the entire rectangular-shaped parcel that was depicted in the Written Materials.

33.   By using the new legal description in the deed of conveyance to plaintiff, the defendants had subdivided out and kept approximately five (5) acres of the rectangular-shaped parcel that Jeff Ard had described as the "Rudd Property" and that was depicted in the Written Materials.

34.   When the McDermotts confronted the defendants about the defendants keeping the approximately five (5) acres, the defendants told the McDermotts that it was just a

5

"misunderstanding" and agreed to "fix" the incorrect legal description so that the entire rectangular-shaped parcel would be conveyed to plaintiff.

35.    The defendants later refused to convey the remaining portion of the rectangular-shaped parcel to plaintiff.

36.    The defendants' conduct in sending the closing agent the new and incorrect legal description amounted to defendants obtaining property from plaintiff by false pretenses, false representations or actual fraud.

37.    The defendants took advantage of the McDermotts by knowingly exploiting the rushed nature of the transaction.

38.    By utilizing the new legal description in the deed of conveyance, the defendants retained a portion of the rectangular-shaped real property called the "Rudd Property" by Jeff Ard that was depicted in the Written Materials and described in both the Rudd Deeds and Ard Mortgages.

39.    The defendants had no other prospects to purchase the "Rudd Property." Thus, if plaintiff had not purchased the "Rudd Property," then the defendants would have lost the entire rectangular-shaped real property depicted in the Written Materials and described in the Rudd Deeds and Ard Mortgages, including the portion carved out and retained by the defendants, to foreclosure.

40.    On or about December 21, 2007, well after defendants were aware of the issue with plaintiff involving the disputed property, defendants borrowed $191,250.00 from Premier Bank and secured it with a first mortgage on the disputed property and another 5 acre parcel of property. This mortgage was recorded on January 3, 2008, in Book 3808, Page 471 of the Pubic Records of Leon County, Florida. A copy of the recorded mortgage is attached as Exhibit "D" and by reference made a part hereof.

41.    On or about February 9, 2009, after repeated efforts to resolve the ownership of the disputed property with defendants, plaintiff initiated a reformation of warranty deed action in Leon County Circuit Court, said case being styled *Fieldstone Investments, LLC vs. William J. Ard and Lisa C. Ard*, Leon County Circuit Court, Case No. 2009-CA-524 (hereinafter "state court case"). A motion for stay relief [Doc. No. 64] is currently pending in this Chapter 7 case in which plaintiff is seeking relief from the stay to proceed with the state court case.

42.    Although plaintiff is not aware of the exact outstanding balance due to Premier Bank from defendants at the time of the filing of defendants' Chapter 7 bankruptcy case on April 28, 2009, a reaffirmation agreement between the defendants and Premier Bank was filed in the bankruptcy case on July 8, 2009 [Doc. No. 53] and indicated that the bank was owed $158,476.84 at that time.

43.    Plaintiff has filed a proof of claim [Claim No. 10] in the bankruptcy case in which it has asserted a claim in the amount of $158,476.84 in the event it is successful in the state court case.

## COUNT I

44.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

45.    Plaintiff objects to the discharge of the defendants from the debt they owe the plaintiff for the property described herein which was obtained by false pretenses, false representations or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, plaintiff prays that the court determines that the debt the defendants owe the plaintiff for the property described herein is nondischargeable, and that plaintiff have such other further relief as is just, including reasonable costs and attorney's fees.

7

## COUNT II

46.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

47.    Plaintiff objects to the discharge of the defendants from the debt they owe the plaintiff in the amount of $158,476.84 which was obtained by false pretenses, false representations or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff respectfully prays that the Court determine that the amount of the debt secured by the mortgage on the disputed property from defendants to Premier Bank (which as of July 8, 2009, was in the amount of $158,476.84) is nondischargeable; that plaintiff have judgment against the defendants for $158,476.84; and that plaintiff have such other further relief as is just, including reasonable costs and attorney's fees.

DATED this 31st day of July, 2009.

James M. Donohue
Florida Bar No. 0191819
Ausley & McMullen
227 South Calhoun Street (32301)
Post Office Box 391
Tallahassee, FL 32302
(850)224-9115
Facsimile: (850) 222-7560
jdonohue@ausley.com

ATTORNEYS FOR
FIELDSTONE INVESTMENTS, L.L.C.

h:\jmd\fieldstone\ard\pleadings\adv proc\complaint 523 - 2009-07-31.doc

8